UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Case No.:

ALEXANDRA PAGNOZZI,
    Plaintiff,

vs.

JP MORGAN CHASE MEDICAL PLAN
    Defendant,

and,

UNITED BEHAVIORAL HEALTH, INC.,
    Defendant.
_____/

**COMPLAINT**

Plaintiff, Alexandra Pagnozzi, (hereinafter "Alexandra Pagnozzi" or "Ms. Pagnozzi," or "Plaintiff"), by and through her undersigned counsel, files this Complaint against Defendants, JP MORGAN CHASE MEDICAL PLAN ("JPMorgan Chase") and UNITED BEHAVIORAL HEALTH ("UBH") (collectively referred to as "Defendants"), and states as follows:

**Jurisdiction, Venue & Parties**

1.    This action is brought under 29 U.S.C. §§ 1132(a), (e), (f) and (g) of the Employee Retirement Income Security Act of 1974 (hereinafter "ERISA") as it involves a claim by Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA.  Jurisdiction is predicated under these code sections as well as 28 U.S.C. § 1331 as this action involves a federal question.  This action is brought for the purpose of obtaining benefits under the terms of an employee benefit plan, enforcing Plaintiff's rights under the terms of an employee benefit plan, and to clarify Plaintiff's rights to future benefits under the employee benefit plan.  Plaintiff seeks relief, including but not limited to: payment of benefits, prejudgment and post-judgment interest, and attorneys' fees and costs.

1

2. Plaintiff, Alexandra Pagnozzi, is and was at all times relevant, a resident of the state of New Jersey.

3. Plaintiff is informed and believes that JPMorgan Chase Medical Plan is an employee welfare benefit plan established and maintained pursuant to the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §1001, *et seq.* Annexed hereto as Exhibit 1 is a document that Defendants produced to Plaintiff administratively, which they purported to be a true and correct copy of the applicable JP Morgan Medical Plan (hereinafter the "Plan"). Annexed hereto as Exhibit 2 is a document that Defendants produced to Plaintiff administratively, which they purported to be a true and correct copy of the applicable JP Morgan Chase Wrap Plan.

4. At all times material hereto, Alexandra Pagnozzi is and was a covered dependent of a participant of the Plan and pursuant to the Plan Plaintiff is and was entitled to health care benefits.

5. Plaintiff is informed and believes that JPMorgan Chase, is a corporation with its principal place of business in the State of New York, and is authorized to transact and is transacting business in the Southern District of Florida, and can be found in the Southern District of Florida.

6. Plaintiff was informed and believes that at all times material hereto, the Plan listed the Plan Administrator as JP Morgan Chase U.S. Benefits Administration.

7. Plaintiff is informed and believes that UnitedHealthcare Services LLC ("UHC") is a corporation with its principal place of business in the state of Minnesota, and is authorized to transact and is transacting business in the Southern District of Florida, and can be found in the Southern District of Florida.

8. Plaintiff was informed and believes that at all times material hereto, the Plan listed the Claims Administrator as UHC.

9. Plaintiff is informed and believes that UBH is a corporation with its principal place of business in the state of California, and is authorized to transact and is transacting business in the Southern District of Florida, and can be found in the Southern District of Florida.

10. Plaintiff is informed and believes that UBH is an affiliate, and/or subsidiary, and/or related company of UHC and issued the adverse benefit determination correspondences at issue in this matter.

11. Venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2), as the material acts and omissions that give rise to this action occurred in this judicial district and Defendants can be found in this judicial district.

12. Plaintiff has fulfilled all conditions precedent to the filing of this lawsuit.

## GENERAL ALLEGATIONS

Plaintiff incorporates by reference paragraphs 1 through 12 as though fully set forth herein.

13. As a participant in the Plan, Ms. Pagnozzi is entitled to receive insurance coverage for mental health treatment that is medically necessary under the terms of the Plan.

14. The Plan includes, but is not limited to, the following relevant provisions:

**Definition of Medically Necessary or Medical Necessity:**
"Health care services and supplies that are determined by the claims administrator to be medically appropriate and:
- Necessary to meet the basic health needs of the covered person;
- Provided in the most cost-efficient manner and type of setting appropriate for the delivery of the service or supply;
- Consistent in type, frequency, and duration of treatment with scientifically based guidelines of national medical, research, or health care coverage organizations or governmental agencies that are accepted by the claims administrator;
- Consistent with the diagnosis of the condition;
- Required for reasons other than the convenience of the covered person or his or her physician; and Demonstrated

3

through prevailing peer-reviewed medical literature to be either:
- Safe and effective for treating or diagnosing the condition or sickness for which their use is proposed; or
- Safe with promising effectiveness:

- For treating a life-threatening sickness or condition;
- In a clinically controlled research setting; and
- Using a specific research protocol that meets standards equivalent to those defined by the National Institutes of Health

15. In 2012, Alexandra Pagnozzi was diagnosed with a severe Eating Disorder.

16. At this time, Alexandra Pagnozzi was under the care of an outpatient treatment team, which included her psychiatrist, Dr. Christopher J. Walsh ("Dr. Walsh"), and nutritionist Robin Millet.

17. After two years of outpatient treatment, Alexandra Pagnozzi's symptoms worsened, and by the summer of 2013, Ms. Pagnozzi was severely restricting her food intake, consistently abusing laxatives, significantly over-exercising, and continuously engaging in self-induced vomiting.

18. To mask her hunger and exhaustion, Alexandra Pagnozzi ingested excessive amounts of caffeine. She was having suicidal thoughts, eating less than 400 calories per day, purging daily, and exercising to the point of passing out.

19. Dr. Walsh's professional medical opinion was that Alexandra Pagnozzi's outpatient treatment was not sufficient to control her symptoms, her treatment needed to be intensified, and that Ms. Pagnozzi required constant supervision given the severity of her condition and dangerous eating disorder behaviors.

20. At or about this time, Alexandra Pagnozzi and her family began to research various treatment facilities.

21. On November 7, 2013, Alexandra Pagnozzi was denied admission to the Intensive Outpatient treatment program ("IOP") at Balance Treatment Center ("Balance") because the treatment team at Balance assessed her condition as too severe and advanced to be treated by Balance's IOP treatment team.

22. Balance determined that it was medically necessary for A Alexandra Pagnozzi to receive residential treatment for her eating disorder.

23. On December 4th, 2013, Alexandra Pagnozzi was assessed for the treatment program at Oliver-Pyatt Centers ("OPC").

24. OPC determined residential treatment was medically necessary to treat Alexandra Pagnozzi's condition, which was consistent with the opinions of her treating psychiatrist, her nutritionist, and the assessment from Balance.

25. Alexandra Pagnozzi was admitted to OPC on December 4, 2013, and received treatment until she was discharged on August 13, 2014.

26. During her time at OPC, Alexandra Pagnozzi received health care services that were medically appropriate and necessary, and consistent with scientifically based guidelines of national medical, research, and health care coverage organizations and governmental agencies.

27. During her time at OPC, Alexandra Pagnozzi received health care services that were consistent with her diagnosis, and were required for reasons other than convenience for her or her physician, as demonstrated by the opinions of her outpatient team, Balance, and her intake and treating therapists at OPC.

28. During her time at OPC, Alexandra Pagnozzi received health care services that were safe and effective for treating her condition.

29. At no time during her stay at OPC was MS. PAGNOZZI in a more restrictive level of treatment than was medically necessary for her condition.

30. Alexandra Pagnozzi attended OPC's residential treatment program from December 4, 2013 through March 2, 2014, throughout which time residential treatment was medically necessary.

31. Between December 4, 2013 through March 2, 2014, Defendants were obligated to make payment under the health benefit contract for Ms. Pagnozzi's residential treatment received at OPC to OPC, located in Dade County, Florida.

32. However, Defendants only submitted a partial payment to OPC for the services rendered between the dates of December 4, 2014 through March 2, 2014 and has wrongfully withheld the full benefits owed under the Plan.

33. On or about March 3, 2014, it was determined that it was medically necessary for Alexandra Pagnozzi to receive treatment for her eating disorder at the Partial Hospitalization Program ("PHP") level of care. Accordingly, Ms. Pagnozzi transitioned from OPC's residential program to its PHP.

34. Alexandra Pagnozzi received treatment at the PHP level of care from March 4, 2014 through May 19, 2014, throughout which time her PHP treatment was medically necessary.

35. Between March 4, 2014 through May 19, 2014, Defendants were obligated to make payment under the health benefit contract for Ms. Pagnozzi's PHP treatment received at OPC to OPC, located in Dade County, Florida.

36. However, Defendants wrongfully refused to make payment for any treatment received between the dates of March 4, 2014 and May 19, 2014.

37. On or about May 20, 2014, it was determined that it was medically necessary for Alexandra Pagnozzi to be treatment for her eating disorder at the Intensive Outpatient Program ("IOP") level of care. Accordingly, Ms. Pagnozzi transitioned from a PHP level of care to OPC's IOP program.

38. Alexandra Pagnozzi was treated at the IOP level of care from May 20, 2014 through July 11, 2014, throughout which time IOP treatment was medically necessary.

39. Between May 20, 2014, through July 11, 2014, Defendants were obligated to make payment under the health benefit contract for Ms. Pagnozzi's IOP treatment received at OPC to OPC, located in Dade County, Florida.

40. However, Defendants wrongfully refused to make payment for any treatment received between May 20, 2014 and July 11, 2014.

41. Unfortunately, despite ongoing and intense treatment, Alexandra Pagnozzi experienced a period of symptom exacerbation and her condition deteriorated.

42. Accordingly, on or about July 11, 2014, it was determined that it was medically necessary for Alexandra Pagnozzi to be treated at the PHP level of care.

43. On or about July 11, 2014, Alexandra Pagnozzi was removed from the IOP level of care, and placed back into a PHP level at OPC.

44. Alexandra Pagnozzi was treated at the PHP level of care at OPC from July 11, 2014 through August 13, 2014, throughout which time PHP treatment was medically necessary.

45. Between July 11, 2014 through August 13, 2014, Defendants were obligated to make payment under the health benefit contract for Ms. Pagnozzi's IOP treatment received at OPC to OPC, located in Dade County, Florida.

46. However, Defendants wrongfully refused to make payment for any treatment received between July 11, 2014 through August 13, 2014.

47. Alexandra Pagnozzi was discharged from OPC on or about August 13, 2014.

48. Alexandra Pagnozzi sought coverage from UBH for her treatment as a participant in the Plan.  However, Defendants have wrongfully and unreasonably withheld the vast majority of the benefits owed under the Plan, causing Ms. Alexandra Pagnozzi to incur substantial financial and emotional hardship.

49. Alexandra Pagnozzi submitted all mandatory administrative appeals of Defendants' adverse coverage determinations, all of which have been upheld by Defendants.

50. As of the date of the filing of this lawsuit, Defendants have failed and refuses to pay for Ms. Pagnozzi's medically necessary treatment despite Alexandra Pagnozzi exhausting all of her administrative remedies and satisfying all conditions precedent entitling her to coverage under the Plan.

51. Alexandra Pagnozzi has performed all conditions precedent to the filing of this lawsuit.

**FIRST CAUSE OF ACTION AGAINST ALL DEFENDANTS**
**Action to Recover Plan Benefits, Enforce Rights Under the Plan,**
**And Clarify Entitlement to Plan Benefits Pursuant to 29 U.S.C (a)(1)(B)**

Plaintiff incorporates by reference paragraphs 1 through 51 as though fully set forth herein.

52   Defendants wrongfully denied Plaintiff's claim for benefits, in the following respects:

8

      (a)    Failure to pay and/or approve medical benefit payments due to Plaintiff at a time when Defendants knew, or should have known, that Plaintiff was entitled to those benefits under the terms of the Plan;

      (b)    Failure to provide prompt and reasonable explanations of the bases relied on under the terms of the Plan documents, in relation to the applicable facts and Plan provisions, for the denial of the claim for medical benefits;

      (c)    After the claims were denied in whole or in part, failure adequately to describe to Plaintiff any additional material or information necessary to perfect the claim along with an explanation of why such material is or was necessary; and

      (d)    Failure to properly and adequately investigate the merits of the claim.

53. Plaintiff is informed and believes and thereon alleges that Defendants wrongfully denied the claims for benefits by other acts or omissions of which Plaintiff is presently unaware, but which may be discovered in this litigation and of which Plaintiff will immediately make Defendants aware once said acts or omissions are discovered by Plaintiff.

54. Following the denial of the claims for benefits under the Plan, Plaintiff exhausted all administrative remedies required under ERISA, and performed all conditions precedent to the filing of this lawsuit.

55. As a proximate result of the denial of medical benefits, Plaintiff has been damaged in the amount of the medically necessary treatment received.

56. As a further direct and proximate result of this improper determination regarding the medical claim, Plaintiff, in pursuing this action, has been required to incur attorneys' fees and costs. Pursuant to 29 U.S.C. § 1132(g) (1), Plaintiff is entitled to have such fees and costs paid by Defendants.

57. Due to the wrongful conduct of Defendants, Plaintiff is entitled to enforce her rights under the terms of the Plan and to clarify her rights to future benefits under the terms of the Plan.

WHEREFORE, Plaintiff, ALEXANDRA PAGNOZZI, prays for judgment against Defendants JP MORGAN CHASE MEDICAL PLAN and UNITED BEHAVIORAL HEALTH, INC., as follows:

a. Payment of all past health insurance benefits due to Plaintiff under the Plan;

b. Payment of prejudgment and post-judgment interest as allowed for under ERISA at the lawful rate;

c. A mandatory Injunction and Declaration requiring Defendants to immediately qualify Plaintiff for medical benefits due and owing under the Plan;

d. Pursuant to 29 U.S.C. § 1132(g), payment of all costs and attorneys' fees incurred in pursuing this action; and

e. For such other and further relief as the Court deems just and proper.

Respectfully submitted this 31st day of March 2015.

> DI LAW GROUP
> Attorneys for Plaintiff
> 4151 Hollywood Boulevard
> Hollywood, Florida 33021
> Tel: (954) 989-9000
> Fax: (954) 989-9999
>
> /s/ Alicia Paulino-Grisham
> Alicia Paulino-Grisham
> Florida Bar No.: 0676926
> E-mail: alicia@dilawgroup.com
>
> /s/ Maggie M. Smith
> Maggie M. Smith
> Florida Bar No.: 023510
> E-mail: maggie@dilawgroup.com